UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

RICHARD M. FLEMING, an individual,

Plaintiff,

v.

CHAD A. BROWN, an individual,

Defendant.

Case No. 3:17-cv-00707-MMD-WGC

ORDER

(Pl.'s Motion to Compel Arbitration and Stay Proceedings
– ECF No. 49)

## I. SUMMARY

Before the Court is Defendant Chad A. Brown's Motion to Compel Arbitration and Stay Proceedings ("Motion"). (ECF No. 49.) Plaintiff Richard M. Fleming responded (ECF No. 50), and Brown replied (ECF No. 51).[1] For the reasons discussed below, Brown's Motion is granted.

## II. BACKGROUND

Fleming and Brown formed a company ("Omnific, LLC" or "Omnific") in 2015 to market a breast cancer screening method that Fleming developed. (ECF No. 49 at 1.) The parties now dispute whether Brown infringed Fleming's U.S. Patent No. 9566037

---

[1] Fleming filed a surreply to Brown's Motion (ECF No. 52), and Brown filed a motion to strike the surreply (ECF No. 53). "Surreplies are not permitted without leave of court." LR 7-2(b). Given that Fleming did not seek leave of court, Brown's motion to strike Fleming's surreply is granted. The Court will also strike Fleming's improper surreply to Brown's motion to strike (ECF No. 57). In addition, Fleming asserted a countermotion in his response to Brown's motion to strike. (ECF No. 54.) The Court will not consider this countermotion because it does not comply with LR IC 2-2(b) and will strike all related briefing (ECF Nos. 56, 58).

("Patent") and copyrights bearing Registration Nos. TX 7-451-243 and TX 7-451-244 ("Copyrights") relating to the breast cancer screening method when Brown allegedly conducted breast imaging studies using the Patent and Copyrights. (*Id.*; ECF No. 38 at 5, 6, 8, 11.)

The parties executed an operating agreement ("2015 Operating Agreement") when they formed Omnific. (*See* ECF No. 49 at 2; *see generally* ECF No. 49-2 (2015 Operating Agreement).) The 2015 Operating Agreement describes the capital contributions both parties made in exchange for an interest in the company. (ECF No. 49-2 at 10-11.) Fleming's capital contribution consisted of assigning to Omnific a perpetual license to certain intellectual property related to the breast cancer screening method he developed. (*Id.*) The assignment consisted of, *inter alia*, future patents related to Fleming's breast cancer screening method as well as scientific advancements by Fleming related to cancer and cardiovascular screening, diagnosis, monitoring, care and treatment. (*Id.*) The 2015 Operating Agreement also excluded certain intellectual property from the assignment—published papers, copyrights, and patents as noted in Fleming's CV. (*Id.* at 11.)

The parties executed a new operating agreement in 2016 ("2016 Operating Agreement") that was allegedly intended to adjust their membership interests. (ECF No. 49 at 2.) Brown contends that "it is not at all clear that the amendment was effective" because, "[a]t some point in that process, Fleming surreptitiously altered certain language related to the contribution of certain intellectual property to Omnific." (*Id.*) The 2016 Operating Agreement clearly differs from the 2015 Operating Agreement. While the assignment provision in the 2015 Operating Agreement included future patents related to Fleming's breast cancer screening method, the assignment in the latter operating agreement did not. (*Compare* ECF No. 49-2 at 10-11 *with* ECF No. 49-3 at 10-11.) Nor did the assignment in the 2016 Operating Agreement include scientific advancements by Fleming related to cancer and cardiovascular screening, diagnosis, monitoring, care and treatment. (*Id.*) The provision of the 2016 Operating Agreement excluding certain intellectual property also appears to be substantively different from the corresponding

provision of the 2015 Operating Agreement. Although both agreements exclude intellectual property and copyrighted material as noted in Fleming's CV (*id.*), the 2016 provision excludes "any and all patent rights owned or held" by Fleming, "subject to the license granted to" Omnific (ECF No. 49-3 at 11).

Both the 2015 and 2016 Operating Agreements contain arbitration clauses. The 2015 Operating Agreement states: "If a dispute arises out of or relates to this Agreement, or the breach thereof, and if said dispute cannot be settled through direct discussions . . . the Members and Manager agree . . . to start proceedings to settle the dispute in an amicable manner by mediation . . . before resorting to arbitration." (ECF No. 49-2 at 18.) The 2016 Operating Agreement contains the same language, though it extends the timeline for resolving the conflict. (*See* ECF No. 49-3 at 18.)

### III. LEGAL STANDARD

"The FAA, 9 U.S.C. § 1 *et seq.*, requires federal district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citing 9 U.S.C. § 3). The FAA limits the district court's role to determining whether a valid arbitration agreement exists, and whether the agreement encompasses the disputes at issue. *Id.* (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 11236, 1130 (9th Cir. 2000)). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983). Thus, "[t]he standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the Act is phrased in mandatory terms." *Republic of Nicar. v. Std. Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991). However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

3

## IV. DISCUSSION

The parties dispute only whether the arbitration clause in the operating agreements encompass the claims at issue. The arbitration agreement applies to all disputes arising out of or relating to the agreement. (*See* ECF No. 49-2 at 18; ECF No. 49-3 at 18.) The claims at issue are for copyright and patent infringement as well as fraud related to such infringement. (ECF No. 38 at 13-16.) Consequently, the core dispute between the parties is whether Fleming assigned to Omnific a perpetual license to the Patent and Copyrights such that Brown did not infringe when he allegedly conducted breast imaging studies using the Patent and Copyrights. (*See* ECF No. 49 at 6.) Such a dispute arises out of and relates to the operating agreements. Fleming argues that the Copyrights and Patent are excluded from the operating agreements (ECF No. 50 at 2), but his argument concedes the point. Whether the Copyrights and Patent are excluded from the operation agreements is a dispute the parties agreed to settle by arbitration.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Defendant's Motion to Compel Arbitration and Stay Proceedings (ECF No. 49) is granted.

It is further ordered that Defendant's Motion to Strike (ECF No. 53) is granted. The Clerk is instructed to strike ECF No. 52.

The Clerk is additionally instructed to strike ECF Nos. 56, 57, and 58.

This case is stayed pending arbitration. The parties are directed to file a status report within fifteen (15) days from conclusion of arbitration.

///

///

///

The Clerk is instructed to administratively close this case.

DATED THIS 22nd day of January 2018.

	MIRANDA M. DU
	UNITED STATES DISTRICT JUDGE